UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BP WEST COAST PRODUCTS, LLC,

Plaintiff,

v.

HATEM SHALABI, et al.,

Defendants.

v.

JEFFREY CARY, et al.

Third-Party
Defendants

CASE NO. C11-1341MJP

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S
MOTION TO DISMISS
COUNTERCLAIMS

This matter comes before the Court on Plaintiff and Third-Party Defendants' motion to
dismiss Defendants/Counterclaimants counterclaims.  (Dkt. No 48.)  Having reviewed the
motion, the response (Dkt. No. 51), the objection to the request for judicial notice (Dkt. No. 52),
the reply (Dkt. No. 53), and all related papers the Court GRANTS in part and DENIES in part
the motion.  The Court finds this matter suitable for decision without oral argument.

**Background**

Plaintiff BP West Coast Products LLC ("BP") has filed suit against Defendant Hatem Shalabi and various corporate entities affiliated with him (collectively referred to as "Shalabi" or "Defendants"), alleging, among other things, that Shalabi has violated certain franchise agreements and deed restrictions. BP alleges Shalabi has ceased to sell BP granted gasoline in violation of franchise agreements and restrictive covenants contained in special warranties. Shalabi now asserts counterclaims against BP and five individuals (collectively "Counterdefendants") who appear to be employees of BP, but whose capacities are not well explained. The causes of action include: (1) fraud; (2) breach of contract; (3) violations of the Washington Franchise Laws; (4) Washington's Consumer Protection Act; (5) conversion; and (6) declaratory relief. (Dkt. No. 46 ("Counterclaims").) The factual allegations run 23 pages and are not organized by cause of action. Shalabi instead tends to conclude each lengthy paragraph with the list of causes of action the alleged conduct supports. The Court runs through the various allegations and the causes of action to which they seem to belong, a point on which Shalabi's complaint fails to be clear.

Shalabi asserts that at an unspecified time likely prior to purchase of the stations, the Counterdefendants misrepresented the volume of gasoline sales per month and the expected profit margins at the gas stations Shalabi purchased. (Counterclaims ¶ 43.) The Counterdefendants also allegedly withheld financial data that would have showed the volumes sold were much less than advertised to the franchise purchasers, and misrepresented the level of contamination that existed at the sites. (¶¶ 43-44.) Shalabi contends that this conduct violated RCW 19.100.170, the State's Franchise Investment Protection Act ("FIPA"), which makes it unlawful to make misrepresentations in the sale or purchase of a franchise.

1    Shalabi further alleges the Counterdefendants deceived him to believe the franchisees

2    could set their own prices for gasoline.  Instead, BP allegedly used a "zone price scheme" to set

3    the wholesale price of gasoline at a level to ensure its franchisees would not make over a certain

4    profit margin.  (Counterclaims ¶ 46.)  Shalabi argues that this was a means for BP to take a

5    portion of the franchisee's profits "in direct violation of the Gasoline Dealers Agreement," one

6    of two franchising agreements applicable to each station.  (<u>Id.</u>)  There is no allegation of when

7    this occurred or who was specifically involved.  Shalabi alleges the Counterdefendants did not

8    disclose the "true nature of their pricing scheme and at best made partial disclosures that were

9    intended to defraud, mislead and lead Counterclaimants and other franchisees to a false

10   impression of the truth."  (<u>Id.</u>)  Had Shalabi known of the scheme, he alleges he would not have

11   entered into the franchise agreements.  (<u>Id.</u>)

12   Shalabi alleges BP routinely and intentionally delayed or sped up deliveries of gasoline to

13   franchisees in order to manipulate or take advantage of fluctuations in gas prices to the

14   disadvantage of the franchisees.  (Counterclaims ¶ 47.)  Without identifying any statements,

15   Shalabi alleges that the Counterdefendants "made representations that [sic] relating to the

16   delivery of gasoline both orally and in writing that were false, and they knew that such

17   representations were false."  (<u>Id.</u>)  Shalabi fails to identify who made the statements, but states

18   that they were made at the time of "offering and sale of franchise agreements to

19   Counterclaimants."  (<u>Id.</u>)  Shalabi further alleges BP frequently allowed its franchisees to run out

20   of gasoline in violation of paragraph 2 of the Gasoline Agreements.  (¶¶ 62-63.) This section of

21   the contract requires BP to "use its best efforts to fill Buyer's orders," yet Shalabi alleges

22   franchisees were without gasoline for up to eleven hours.  (¶¶ 62-63.)  Shalabi also alleges BP

23   commingled gasoline with non-Arco brand gasoline before delivery to franchisees in violation of

24

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS- 3

1   the Gasoline Agreements.  (¶ 49.)  Shalabi alleges the Counterdefendants "made representations

2   both orally and in writing that they would not deliver comingled gasoline" and that this was

3   fraudulent.  (Id.)  Shalabi does not allege when this occurred or who made the statements.

4   Shalabi also alleges this is a violation of Washington "Franchise Protection Laws," but does not

5   specify exactly which laws.

6          Shalabi further alleges the Counterdefendants violated Washington's "Franchise

7   Protection Laws" by engaging in unlawful tying arrangements.  Shalabi states that franchisees

8   were forced to use certain financial and accounting systems as dictated by BP.  (Counterclaims ¶

9   51.)  This information was apparently not disclosed or misrepresented at the time of Shalabi

10  entered into franchising agreements.  (Id.)  Shalabi's pleadings include a boilerplate allegation

11  that this was fraudulently concealed from Shalabi.  Shalabi further alleges the illegal tying also

12  included BP's requirement that each gasoline franchisee also enter into a franchise agreement to

13  run an ampm minimart at each gas station, which included a $70,000 franchise fee.  (¶ 52.)

14  Shalabi indicates that the tying arrangements violate RCW 19.100.180.  He further alleges that

15  BP has unlawfully taken royalties from franchisees through its zone pricing scheme.  (¶ 59.)

16  Shalabi also alleges that the BP has unlawfully treated franchisees differently by allowing new

17  franchisees not to have to run ampm stores.  (¶ 60.)  Both of these are alleged to violate RCW

18  19.100.180, the FIPA.

19         Shalabi contends further that BP has violated the Gasoline Dealers Bill of Rights Act

20  ("GDBRA"), RCW 19.120.060, by permitting BP to dictate the retail price its franchisees can

21  sell gas.  (Counterclaims ¶¶ 63-64.)  Shalabi bases this on paragraph 5 of the Gasoline

22  Agreements, which is not entirely as Shalabi purports it to be.  Shalabi selectively quotes one

23  portion of the paragraph, and ignores that BP's ability to set prices is limited to "temporary

24

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS- 4

1  voluntary allowances" ("TVA"), when certain retail conditions exist.  (¶ 5 of Gasoline

2  Agreements.)  Lastly, Shalabi seeks declaratory relief that he has the right to terminate the

3  franchise agreements pursuant to paragraph 17.1 of the Gasoline Agreements.  That section of

4  the agreements lists the conditions on which BP, not the franchisees, can trigger termination.

5  However, Shalabi has found at least one sentence suggesting that he has an unspecific right to

6  terminate the agreements.

7          BP now seeks dismissal of all counterclaims alleged.

8                                              **Analysis**

9  A.      <u>Standards</u>

10         BP seeks dismissal of Shalabi's counterclaims under Rule 12(b)(6).  Shalabi's claims of

11  fraud must meet Rule 9(b), while the others need only satisfy Rule 8(a).

12         Under Rule 9(b), Shalabi is required to "state with particularity the circumstances

13  constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The allegations explaining the fraud must

14  "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can

15  defend against the charge and not just deny that they have done anything wrong.'"  <u>Vess v. Ciba-</u>

16  <u>Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting <u>Bly-Magee v. California</u>, 236

17  F.3d 1014, 1019 (9th Cir. 2001)).  "Averments of fraud must be accompanied by 'the who, what,

18  when, where, and how' of the misconduct charged."  <u>Id.</u> (quoting <u>Cooper v. Picket</u>, 137 F.3d

19  616, 627 (9th Cir. 1997).  "The plaintiff must set forth what is false or misleading about a

20  statement, and why it is false."  <u>In re GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir.

21  1994).  Rule 9(b)'s particularity requirement applies equally to federal and state law claims

22  pleaded in federal court.  <u>Vess</u>, 317 F.3d at 1103.

23

24

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS- 5

1    Under Rule 8(a), the Court must assess the viability of the complaint under a lower

2    standard than Rule 9(b).  Dismissal is appropriate where a complaint fails to allege "enough facts

3    to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S.

4    544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

5    allows the court to draw the reasonable inference that the defendant is liable for the misconduct

6    alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing Twombly).  The

7    Court accepts the factual allegations as true, but need not accord the same deference to legal

8    conclusions.  Id. at 1949-50 (citing Twombly, 550 U.S. at 555).  To the extent documents

9    referenced in a complaint contradict a plaintiff's conclusory allegations, the Court is not required

10   to accept those allegations as true.  Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th

11   Cir. 1998).

12   B.    Fraud Claims

13   BP correctly argues that Shalabi has failed to plead his fraud claims with the particularity

14   required of Rule 9(b).

15   The alleged fraud involving price fixing, commingling of gasoline, zone pricing, and ill-

16   timed gasoline deliveries are inadequately pleaded.  Where Shalabi alleges misrepresentations

17   were made, he has not stated what the statements were, when the statements were made, or who

18   made the statements.  Beyond misrepresentations, Shalabi's recitation of facts supporting other

19   claims fraud is too ambiguous to satisfy Rule 9(b).  Shalabi's boilerplate conclusions that certain

20   facts constitute fraud are not enough to satisfy Rule 9(b).  The Court GRANTS the BP's motion

21   on these claims and DISMISSES them with leave to amend.

22   Shalabi's claims that the Counterdefendants misrepresented the condition of the

23   properties are not pleaded with adequate detail to survive dismissal.  Shalabi alleges that BP and

24

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS- 6

1    the individual Counterdefendants "misrepresented the condition of the property, and failed to

2    fully disclose the level of contamination of the station from prior contamination by BPWQCP,

3    even though they were fully aware of the level of contamination." (¶ 44.) This allegation fails to

4    specify which of the Counterdefendants made the statement, when exactly the statement was

5    made, what had been disclosed, and why the statement was false. BP asks the Court to go yet

6    further by taking judicial notice of declarations of environmental restrictions executed on six of

7    the sites at issue in this litigation. (Dkt. No. 49.) The Court need not and does not reach this

8    issue because Shalabi's claims fail under Rule 9(b) regardless of whether certain disclosures

9    about certain properties were made.

10          Shalabi has also failed to set forth sufficient detail about the alleged omissions that took

11   place regarding the zone pricing and tying arrangements. The core problem with these

12   allegations is that the Gasoline Agreements and ampm agreements that are part of the

13   record/complaint appear to disclose the tying agreements. BP points out that they disclosed the

14   requirement to use CitiBank's credit program, use or lease PIC equipment, use BP's credit

15   processing services, and to use specified accounting software. (Dkt. No. 48 at 12.) Shalabi

16   comes up with no response to explain the basis of the claim. The Court DISMISSES the claim

17   with leave to amend.

18          Shalabi's fraud claim premised on BP's alleged commingling of Arco gasoline is

19   inadequately pleaded. Shalabi alleges that the Counterdefendants "made representations both

20   orally and in writing that they would not deliver comingled gasoline." (¶ 49.) Nowhere has

21   Shalabi identified who made the statements, when they were made, or why they were false.

22   These generic allegations are inadequate to survive dismissal.

23

24

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS- 7

1  The Court GRANTS BP's motion as to the fraud claims, and DISMISS them with leave

2  to amend.

3  C.    Breach of Contract

4  BP seeks dismissal of the breach of contract claims on the theory Shalabi has not

5  identified which contract provisions are at issue or that he has misrepresented their content.  The

6  Court agrees in part.

7  "A breach of contract is actionable only if the contract imposes a duty, the duty is

8  breached, and the breach proximately causes damage to the claimant."  Nw. Indep. Forest Mfrs.

9  v. Dep't of Labor & Indus., 78 Wn. App. 707, 712 (1995).  A breach of contract claim must point

10  to a provision of the contract that was breached.  See, e.g., Elliot Bay Seafoods, Inc. v. Port of

11  Seattle, 124 Wn. App. 5 (2004).

12  Aside from the claims related to the delivery of gasoline and the right to termination,

13  Shalabi has failed to identify any specific provisions of the franchising agreements that were

14  violated.  This makes it impossible for the Court to weigh whether the claims are adequately

15  pleaded.  The Court finds those claims that fail to identify any specific contractual provision are

16  inadequately pleaded and DISMISSES them.  The Court grants leave to amend and advises

17  Shalabi that any revised claims must contain more specificity as to which contractual obligations

18  are at stake and what conduct violated the duties imposed.

19  Shalabi has stated what appears to be a valid claim for violations of paragraph 5 of the

20  Gasoline Agreement.  Shalabi has alleged that BP was under an obligation to make best efforts to

21  delivery gasoline, and that it frequently allowed its franchisees to run out of gas, or either sped

22  up or slowed down delivery in a manner inconsistent with the contract.  (Counterclaims ¶¶ 47,

23  62, 63.)  BP suggests that it has not violated this provision because they always used "best

24

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS- 8

1   efforts." That is an issue of fact that cannot be resolved on a motion to dismiss. These Court

2   DENIES the motion as to this claim.

3   D.    FIPA

4         BP seeks dismissal of Shalabi's claims brought under the Washington Franchise

5   Investment Protection Act ("FIPA"). The Court does not find dismissal appropriate.

6         FIPA, RCW 19.100 et seq., applies only to franchises, a term defined by statute to

7   require: (1) a grant of right to do business "under a marketing plan; (2) the payment of a

8   franchising fee; and (3) the business to be associated with a trademark or related mark. RCW

9   19.100.010(4)(a). Only the second element, a franchise fee, is at issue. A "franchising fee" is

10  defined quite broadly to include "any fee or charge that a franchisee or subfranchisor is required

11  to pay or agrees to pay for the right to enter into a business or to continue a business under a

12  franchise agreement. . . ." RCW 19.100.010(12). Applying FIPA, the Ninth Circuit held a

13  franchising fee involving a gasoline franchise existed where the franchisee was required to

14  purchase Mobile oil, tires, batteries, etc., at inflated prices. Blanton v. Mobil Oil Corp., 721 F.2d

15  1207, 1220 (9th Cir. 1983).

16        BP argues that FIPA does not apply because Shalabi never paid more than a bona fide

17  wholesale price for gasoline. This argument is without merit. Shalabi has alleged that he has

18  been required to pay more than he a reasonable wholesale price for gasoline from BP because of

19  the zone pricing scheme and because of faulty deliveries. Similar allegations of purchasing

20  gasoline and related products at inflated prices was sufficient to state a claim under FIPA in

21  Blanton and it is enough here. BP suggests that because it has the ability to set any wholesale

22  prices and has not exceeded retail prices, there can be no franchise fee. (Dkt. No. 48 at 25.) The

23  case BP relies on held only that a payment of more than fair market value is not a wholesale

24

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS- 9

1   price. <u>Bryant Corp. v. Outboard Marine Corp.</u>, C93–1365R, 1994 WL 745159, at *3 (W.D.

2   Wash. Sept. 29, 1994).  As alleged, Shalabi contends that he paid more than a valid wholesale

3   price, which would exceed the fair market value if fair market value is gauged as to similarly

4   situated retailers.  This argument is not adequate to form a basis for dismissal.

5           BP also seeks dismissal on the theory that Shalabi did not pay a franchising fee

6   associated with the gasoline agreements and thus FIPA is inapplicable.  Shalabi has made a

7   strong case that he was required to pay a franchising fee as to the gas stations because he was

8   required to also open and operate an <u>ampm</u> store that had a $70,000 franchising fee.  Although

9   the agreements are distinct, they are dependant agreements.  One could not operate an Arco

10  station without also having an <u>ampm</u> minimart.  Functionally, Shalabi was forced to pay a

11  franchising fee to enter into the gasoline agreement and operate a gas station.

12          BP lastly argues that the legislature did not intend FIPA to apply to gas stations, and that

13  its intent is a basis for dismissal.  (Dkt. No. 48 at 24.)  There is no express provision in FIPA

14  supporting this position.  Whatever the legislature may have had in its "mind," it did not put it

15  into law.  The Court does not find it proper to re-write FIPA and add in an exclusion based on

16  the legislative history.  The Court rejects this invitation.  The Court DENIES the motion to

17  dismiss the FIPA claims.

18  E.      <u>GDBRA Claims</u>

19          Shalabi asserts what appear to be two claims under the Washington Gasoline Dealer Bill

20  of Rights Act ("GDBRA"): (1) BP's zone pricing violates the Act; and (2) the tying

21  arrangements violate the GDBRA.   The Court dismisses both claims.

22          1.      <u>Zone Pricing</u>

23

24

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS- 10

1    The GDBRA makes it unlawful to "[d]iscriminate between motor fuel retailers in the

2    charges offered or made for royalties, goods, services, equipment, rentals, advertising services,

3    or in any other business dealing. . . ." RCW 19.120.180(2)(b).  Discrimination is acceptable if

4    the supplier shows that "any classification of or discrimination between motor fuel retailers is

5    reasonable, is based on motor fuel franchises granted at materially different times and such

6    discrimination is reasonably related to such difference in time or on other proper and justifiable

7    distinctions considering the purposes of this chapter, and is not arbitrary." Id.

8    Shalabi has alleged that the zone pricing is discriminatory.  He has failed to identify what

9    class of similarly situated retailers is treated better than he is.  This alone is fatal to his claim.

10   Shalabi suggests that because BP can set a price through a temporary voluntary allowance

11   ("TVA"), it has discriminatory power.  This is not adequate, as the TVA does not allow for

12   discrimination.  The Court finds the GDBRA claims based on discrimination are inadequately

13   pleaded and DISMISSES them with leave to amend.

14        2.    Tying

15   The GDBRA prohibits BP from requiring "a motor fuel retailer to purchase or lease

16   goods or services of the motor fuel refiner-supplier or from approved sources of supply unless

17   and to the extent that the motor fuel refiner-supplier satisfies the burden of proving that such

18   restrictive purchasing agreements are reasonably necessary for a lawful purpose justified on

19   business grounds, and do not substantially affect competition. . . ." RCW 19.120.080(2)(a).  To

20   determine whether the tying arrangement is illegal, the Court is directed to review cases applying

21   federal anti-trust laws.  Id.

22   To prevail on a tying claim, Shalabi must allege that (1) BP tied together the sale of two

23   distinct products or services; (2) BP possesses enough economic power in the tying product

24

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS- 11

1  market to coerce Defendants into purchasing the tied product; and (3) the tying arrangement

2  affects a "not insubstantial volume of commerce" in the tied product market.  Rick-Mik Enters.,

3  Inc. v. Equilon Enters., LLC, 532 F.3d 963, 971 (9th Cir. 2008) (quotation omitted).  "[T]ies are

4  prohibited where a seller 'exploits,' 'controls,' 'forces,' or 'coerces' a buyer of a tying product

5  into purchasing a tied product."  Id. (citation omitted).  "[I]n all cases involving a tying

6  arrangement, the plaintiff must prove that the defendant has market power in the tying product."

7  Illinois Tool Works Inc. v. Indep. Ink, 547 U.S. 28, 46 (2006).

8          Shalabi's tying claim fails because he has not alleged any facts on which to conclude that

9  BP exerts coercive market power to force those who wish to run gasoline stations into any tying

10  arrangements.  Instead, he claims that BP's market power is so obvious is satisfies the principle

11  of "res ipsa loquitor." (Dkt. No. 51 at 13.)  Maxims do not substitute for actual pleadings.

12  Shalabi has not explained how BP uses market force to coerce its franchisees.   Rather, it appears

13  that individuals freely choose to become franchisees and agree to the tying products when

14  entering into the franchising arrangements.  The Court DISMISS this claim and grants leave to

15  amend.

16  E.      Consumer Protection Act

17          Shalabi's complaint contains a CPA claim that dependant on his FIPA claims.  Because

18  Shalabi has alleged adequate FIPA claims, his CPA claim also survives.  The Court DENIES the

19  motion as to this claim.

20  F.      Declaratory Relief

21          Shalabi seeks declaratory relief decreeing him to have a right to terminate the Gasoline

22  Agreements.  This claim turns on paragraph 17 of the Gasoline Agreement.  Though somewhat

23  tenuous, Shalabi's claim for declaratory relief survives dismissal.

24

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS- 12

The Gasoline Agreement contains language that can be construed to permit the franchisee the ability to terminate the gasoline agreement. Paragraph 17.3, entitled "Effect of Termination or Nonrenewal," states in part that "[i]f Buyer [i.e., Shalabi] terminates or does not renew this agreement or if BPWCP terminates or does not renew this Agreement for a reason set forth in Paragraph 17.1 or 17.2 above, then Buyer shall pay for the removal or covering up of all trade dress and trademarks as required hereunder." Paragraphs 17.1 and 17.2 discuss BP's rights to terminate the agreements, and make no provision to Shalabi to terminate. Shalabi correctly points out that the language in Paragraph 17.3 suggests he does have a right to terminate, even if the basis for termination in 17.1 and 17.2 do not apply to him. The Court thus DENIES the motion to dismiss this claim.

The Court separately notes that Shalabi's argument and pleadings stretch the language of the contract improperly. Shalabi has replaced the word "BP" in Paragraphs 17.1 and 17.2 and replaced it with "Buyer." This is improper. Both Paragraphs 17.1 and 17.2 of the Gasoline Agreement are limited to BP's right of termination. As explained above, the paragraph 17.3 suggests Shalabi has a right to terminate, but the bases for termination set out in paragraphs 17.1 and 17.2 are applicable only to BP.

## Conclusion

Shalabi has stated sufficient factual allegations to sustain his FIPA, CPA, one breach of contract, and declaratory relief counterclaims. The motion to dismiss these claims is DENIED. Shalabi has failed to articulate his fraud claims with adequate particularity and his GDBRA and many breach of contract claims suffer from clear pleading defects. The Court GRANTS the motion on these claims and DISMISSES them with leave to amend. The Court notes that Shalabi has not made the task of deciphering his allegations and counterclaims particularly easy.

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS- 13

1   The counterclaims are comprised of lengthy and disorganized factual recitations punctuated by a

2   list of the causes of action to which the facts belong.  Should Shalabi chose to amend, the Court

3   encourages Shalabi to revise and amend all of his claims.  Counsel should organize and segregate

4   the factual allegations by claim, specify the exact laws under which claims are brought, and

5   avoid boilerplate recitations of claims.  Any amended pleadings must be filed within 20 days of

6   entry of this order.

7          The clerk is ordered to provide copies of this order to all counsel.

8          Dated this 10th day of February, 2012.

9

10

11

Marsha J. Pechman
12                                      United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24