1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
9                    AT SEATTLE

10   BP WEST COAST PRODUCTS, LLC,              CASE NO. C11-1341MJP

11                    Plaintiff,              ORDER GRANTING IN PART AND
                                              DENYING IN PART PLAINTIFF'S
12        v.                                  AND THIRD PARTY
                                              DEFENDANTS' MOTIONS TO
13   HATEM SHALABI, et al.,                   DISMISS AMENDED
                                              COUNTERCLAIMS
14                    Defendants and
                      Third-Party
15                    Plaintiffs

16        v.

17   JEFFREY CARY, et al.,

18                    Third-Party
                      Defendants
19

20

21        This matter comes before the Court on Plaintiff and Third-Party Defendants' motions to

22   dismiss Defendants/Counterclaimants counterclaims.  (Dkt. No. 69–70.)  Having reviewed the

23   motions, the responses (Dkt. No. 71–72), the replies (Dkt. No. 73–74), and all related papers the

24   ORDER GRANTING IN PART AND DENYING IN
     PART PLAINTIFF'S AND THIRD PARTY
     DEFENDANTS' MOTIONS TO DISMISS
     AMENDED COUNTERCLAIMS- 1

Court GRANTS in part and DENIES in part the motions.  The Court finds this matter suitable for

decision without oral argument.

**Background**

Plaintiff BP West Coast Products LLC ("BP") filed suit against Defendant Hatem Shalabi

and various corporate entities affiliated with him (referred to as "Shalabi"), alleging, among

other things, that Shalabi has violated certain franchise agreements and deed restrictions.  BP

allegedly sold Shalabi eighteen service stations at below market value in exchange for a

requirement that Shalabi enter into franchise agreements mandating the sale of Arco-branded

gasoline and the operation of <u>ampm</u> minimarkets.  As alleged, BP conveyed title to most of the

properties by special warranty deed containing a restrictive covenant that requires Shalabi to sell

Arco gasoline and operate an <u>ampm</u> minimarket on each site.  BP alleges that Shalabi has ceased

to sell BP branded gasoline in violation of restrictive covenants contained in special warranties.

Through this action, BP seeks to enforce the deed restrictions.

Shalabi asserted several counterclaims in his first answer, including: (1) fraud; (2) breach

of contract; (3) violations of Washington's Franchise Investment Protection Act ("FIPA"); (4)

violations of Washington's Gasoline Dealer Bill of Rights ("GDBR"); (5) violations

Washington's Consumer Protection Act ("CPA"); (6) equitable counterclaims; (7) conversion;

and (8) declaratory relief.  The Court granted in part and denied in part BP's and the Third-Party

Defendants' (together referred to as "Counterdefendants") motion to dismiss those claims.  (Dkt.

No. 64.)  Shalabi now attempts to renew all dismissed claims with an amended answer.  (Dkt.

No. 67, "Am. Answer".)  BP moves the Court to dismiss these claims again.  (Dkt. No. 69.)

Additionally, some of the Third-Party Defendants seek dismissal for deficiencies of personal

jurisdiction, service, and failure to state a claim for which relief can be granted.  (Dkt. No. 70.)

Shalabi alleges several instances of fraud in relation to his purchase of the gas stations in question and the delivery of gasoline to them. Shalabi claims the same facts supporting his fraud claims also support for his breach of contract and violations of FIPA, the GDBR, and the CPA. First, Shalabi alleges that Donald Strenk, President of <u>ampm</u>, and Jeff Cary, real estate manager for BP at the time of the purchases (both Third-Party Defendants) misrepresented the volume of gasoline sales per month and the expected profit margin at the gas stations prior to their purchase. (Am. Answer ¶¶ 43–44.) Cary and Strenk also allegedly withheld financial data that would have revealed that the volumes of gasoline and profits were significantly lower than what was represented to Shalabi. (<u>Id.</u>) Second, Shalabi alleges that Counterdefendants misrepresented the level of environmental contamination at the purchased gas stations and that certain stations had not been "Type 5" tested. (<u>Id.</u> ¶¶ 51-53.) Third, Shalabi alleges that Counterdefendants deceived him regarding a franchisee's ability to set gasoline prices. (<u>Id.</u> ¶ 59.) Fourth, Shalabi claims BP routinely and intentionally delayed or sped up deliveries of gasoline to maximize profits, and BP allowed Shalabi's gas stations to run out of gasoline on numerous occasions in violation of ¶ 2 of the Gasoline agreement, despite assurances from Strenk and Cary that this would not happen. (<u>Id.</u> ¶ 73.) Fifth, Shalabi alleges BP provided commingled gasoline to his gas stations in violation of the Gasoline Agreements and despite contrary assurances. (<u>Id.</u> ¶ 80.) Sixth, Shalabi alleges the Counterdefendants engaged in unlawful tying arrangements. Seventh, Shalabi alleges BP has unlawfully treated franchisees differently by not requiring new franchisees to run <u>ampm</u> stores, contrary to assurances BP would always require franchisees to operate <u>ampm</u> stores. (<u>Id.</u> ¶ 103.)

Shalabi also pursues three claims for declaratory judgment. Shalabi first argues he is entitled to declaratory relief that the deed restrictions are unenforceable. (<u>Id.</u> ¶ 112.) He also

seeks a declaration that BP breached the Gasoline Dealers Agreement and that it is terminated, and that it breached the ampm agreements and therefore terminated them.  (Id. at ¶¶ 114–15, 116–17.)

Finally, Shalabi makes several equitable claims for money had and received, unjust enrichment, and conversion.  (Am. Answer ¶ 125.)  He claims that Counterdefendants took money in the form of unlawful royalties, interest, and other items of value—amounting to unjust enrichment and the tort of conversion.  (Id. at ¶ 98.)  Shalabi requests a constructive and/or resultant trust for the allegedly improperly taken funds.  (Id.)

Counterdefendants ask the Court to take judicial notice of Declarations of Environmental Restrictions ("DERs").  (Dkt. No. 69 at 14.)  While generally a court may not consider material beyond the complaint in a 12(b)(6) motion to dismiss, a court may take judicial notice of matters of public record, as long as the facts noticed are not subject to reasonable dispute.  Intri-Plex Techs., Inc. v. Crest Group Inc., 499 F.3d 1048, 1052 (9th Cir. 2007).  The DERs are a matter of public record that are not disputed by Shalabi and the Court takes judicial notice of them as they are relevant to certain fraud claims analyzed below.

**Analysis**

A.  Third-Party Defendants' Motion to Dismiss Defendants' Amended Third-Party Claims

Third-Party Defendants Cary, Fry, DeShazo, Motley, and Schott move for an order dismissing the claims against them.  Cary, Fry, and Motley argue that Shalabi has failed to: (1) show personal jurisdiction; and (2) serve them in a timely manner.  The Court GRANTS the motion to dismiss as to Fry and Motley for a lack of personal jurisdiction, and as to Cary for failure to properly serve.

a.  Personal Jurisdiction

The Court has personal jurisdiction over Fry and Motley, but not Cary.

Shalabi, as Third-Party Plaintiff, bears the burden of establishing that the Court has personal jurisdiction as required by Fed. R. Civ. P 12(b)(2). <u>Fields v. Sedgwick Associated Risks, Ltd.</u>, 796 F.2d 299, 301 (9th Cir. 1986). Shalabi must provide specific factual allegations of minimum contacts with Washington to satisfy this burden. <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 766 (9th Cir. 2007). While continuous contacts by the defendant can provide a court with general jurisdiction, Shalabi has not made any such allegations. <u>See</u> <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 620 (9th Cir. 1991). Shalabi can thus only show limited personal jurisdiction, which requires: "1) that the nonresident defendant must have <u>purposefully availed</u> himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must <u>arise out of</u> or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be <u>reasonable</u>." <u>Id.</u> at 620–21 (emphasis in original).

Shalabi does not provide any factual details, statements, or conduct that would establish Fry and Motley's minimum contacts with Washington. As such, the claims against Fry and Motley are DISMISSED for lack of personal jurisdiction.

Shalabi does establish minimum contacts as to Cary. Purposeful direction of a foreign act that has an effect in the forum state is sufficient to establish personal jurisdiction. <u>Haisten v. Grass Valley Med. Reimbursement Fund</u>, 784 F.2d 1392, 1397 (9th Cir. 1986). Shalabi alleges that Cary made numerous statements to him in attempts to facilitate the sale of gas stations located within Washington. (Am. Answer ¶¶ 44–45, 51, 59, 73, 80, 88, 103.) Shalabi's claim arises out of Cary's efforts to sell the gas stations, and exercising jurisdiction is reasonable given Cary's apparently willful involvement in Shalabi's purchase of the stations. The Court DENIES the motion to dismiss Cary for a lack of personal jurisdiction.

b. Service

Third-Party Defendants Cary, Fry, and Motley move for dismissal for untimely service.

A third-party complaint must be served within 120 days of its filing. See Fed. R. Civ. P. 13(a)(1); Fed. R. Civ. P. 4(m). If service is not accomplished within 120 days, and the plaintiff shows good cause for its failure, the Court must extend the time. Fed. R. Civ. P. 4(m). If not, the Court must dismiss the action without prejudice or order that service be made within a specified time. Id. In exercising this broad discretion, the Court should consider actual notice, a statute of limitations bar, prejudice to the defendant, the good faith of the movant, and eventual service. See Efaw v. Williams, 473 F.3d 1038, 1041 (9th Cir. 2007); Lemoge v. United States, 587 F.3d 1188, 1192 (9th Cir. 2009).

Although Cary, Fry, and Motley appear to have actual notice and might not even be prejudiced, Shalabi's behavior warrants dismissal. The 120 day period expired on February 20, 2012, yet three months after the deadline, Shalabi has still failed to either provide service or assure that service will be effectuated if additional time is given. He also does not argue he faces the expiration of any statute of limitation and he fails to respond to the substantive arguments made by Counterdefendants. The Court construes this as a concession that the motion has merit. See Local Rule CR 7(b)(2). Accordingly, Counterdefendants' motion to dismiss for failing to provide timely service is GRANTED as to Cary. As to Fry and Motley, the claims are alternatively dismissed for lack of service, although the Court primarily dismisses them for lack of personal jurisdiction.

B. Fraud Claims

The Counterdefendants rightly point out that, for the most part, Shalabi has failed to plead with the particularity required for fraud under Rule 9(b). After examining the standard, the Court applies it to the fraud claims alleged.

1

2        a.   <u>Legal Standards</u>

3        A fraud claim must be alleged with particularity under Fed. R. Civ. P. 9(b), including

4   "the who, what, when, where, and how of the misconduct charged."  <u>Vess v. Ciba-Geigy Corp.</u>

5   <u>USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation omitted).  The circumstances constituting

6   the alleged fraud must "be 'specific enough to give defendants notice of the particular

7   misconduct . . . so that they can defend against the charge and not just deny that they have done

8   anything wrong.'"  <u>Id.</u> (quoting <u>Bly-Magee v. California</u>, 236 F.3d 1014, 1019 (9th Cir. 2001)).

9   This heightened pleading standard applies to Shalabi's common law, FIPA and GDBR claims.

10  <u>Id.</u> at 1103 (holding that Rule 9(b)'s particularity requirement applies equally to federal and state

11  law claims pleaded in federal court).

12        To prevail on a common law claim of fraud, the plaintiff must establish each of the

13  following elements:

14        (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's
          knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the
15        plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the trust of
          the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the
16        plaintiff.

17  <u>Stiley v. Block</u>, 130 Wn.2d 486, 504 (1996).

18        Factors (1), (4), and (8) require further attention because they are critical to the

19  resolution of the pending motions.  First, as to existing facts, a promise to perform a future

20  act does not constitute a representation of an existing fact.  <u>Stiley</u>, 130 Wn.2d at 505-06.

21  Thus, a fraud claim premised on a promise to perform a future act cannot proceed.  Second,

22  the falsity of a statement can be imputed to the principal, provided that at least one agent was

23  aware of its falsity.  <u>See</u> <u>Plywood Mktg. Assocs. v. Astoria Plywood Corp.</u>, 16 Wn. App.

24

566, 575 (1976) ("a corporate principal is chargeable with notice of facts known to its agent. . . ."). Finally, a plaintiff asserting fraud must "plead and prove that he justifiably relied on the defendants misrepresentations," and "[a] party's reliance is justified when it is 'reasonable under the surrounding circumstances.'" <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 761–62 (9th Cir. 2007) (quoting <u>ESCA Corp. v. KPMG Peat Marwick</u>, 135 Wn.2d 820, 828 (1998)).

Washington's FIPA and GDBR provide independent causes of action for fraud relating to the sale of franchises and motor fuel franchises. <u>See</u> RCW 19.100.190; RCW 19.120.090. Under FIPA and GDBR "[i]t is unlawful for any person in connection with the offer, sale, or purchase of any franchise" to make an untrue statement of material fact, omit a material fact, employ any "device, scheme, or artifice to defraud," or engage in "any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." RCW 19.100.170; RCW 19.120.070. Unlike common law fraud, fraud under Washington's FIPA and GDBR provisions have been interpreted as not requiring the "scienter" elements of common law fraud: (4) knowledge of falsity by the speaker; and (5) intent that the statement should be acted upon by the plaintiff. <u>Kirkham v. Smith</u>, 106 Wn. App. 177, 183 (2001).

### b. Volume and Profits

Shalabi has supported the common law, FIPA, and GDBR fraud claims based on misrepresentations about volume and profits. BP does not seek dismissal of these claims. (Dkt. No. 69 at 27–28.)

### c. Environmental Contamination

Shalabi alleges fraud regarding environmental concerns at nine of the eighteen stations he purchased. Of these claims, he sufficiently pleads common law, FIPA, and GDBR fraud claims as to the Redmond, Rainier, and Covington stations. Shalabi's allegations fall into two

categories: (1) that Strenk represented that the stations Shalabi was purchasing were clean and not contaminated; and (2) that Cary told him that "many" of the properties were not Type 5 tested for contamination, but that they in fact were.  (Am. Answer ¶ 51.)

Shalabi fails to show how he was deceived in the purchase of the Bonnie Lake station (#83038) because an exhibit attached to Counterdefendants' original complaint reveals that Shalabi did not purchase this property and is instead leasing this property from a third party. (Dkt. No. 9, Ex. 27 at 1.)  As pled, Shalabi's fraud claims cannot succeed as to the Bonnie Lake station, and Counterdefendants' motion to dismiss is GRANTED.

Shalabi cannot show justifiable reliance to sustain his fraud claims arising out of the purchase of the following stations: Redmond (#82942), Olympia (# 83036), Steel Street (#83035), Graham (#83033), 140th Renton (#83084), and Kirkland (#83086).  Shalabi claims Strenk told him that these stations were not contaminated, but that Shalabi discovered that they in fact were contaminated after he purchased them.  (Am. Answer ¶ 51.)  The DERs Shalabi signed for these stations, however, included Shalabi's acknowledgement of the contamination. (Dkt. No. 49 at 7, 16, 26, 35, 44, 54) (stating "[o]wner acknowledges that Pre-Closing Contamination is on, under, or near the real estate.").)  These acknowledgements make it impossible for Shalabi to plead or prove justifiable reliance.  See Swartz, 476 F.3d at 761–62. The Court GRANTS Counterdefendants' motion to dismiss the fraud claims concerning these stations.

Shalabi sufficiently alleges fraud claims under common law, FIPA and the GDBR concerning whether Type 5 testing occurred at the Redmond (#82942), Rainier Ave (#83035), and Covington (#83032) stations.  Shalabi claims that Cary represented the stations had not been Type 5 tested, but that he discovered that they were in fact Type 5 tested.  (Am. Answer ¶ 52.)

Redmond's DER does not speak to Type 5 testing (Dkt. No. 49 at 7), and nothing else in the pleadings shows why Shalabi could not rely on the statements. In fact, there is little to explain what Type 5 testing is, other than it has some relationship to contamination. The Counterdefendants argue that Type 5 testing must be presumed where there is a disclosure that the property had been contaminated. (Dkt. No. 69 at 30.) That argument applies only to Redmond station, as Counterdefendants do not provide a DER for Rainier Ave. and Covington stations. Additionally, accepting that argument requires the Court to look beyond the pleadings and accept Counterdefendants' definition of Type 5 testing. The Court refuses to indulge such a conclusion based on assertions made only in pleadings. Cary's alleged representations that these stations were not Type 5 tested meet all of the fraud requirements for FIPA and the GDBR. The alleged representation also meets the additional common law requirement of a knowingly false statement—BP, or one of its agents, was allegedly aware Type 5 Testing had taken place (Am. Answer ¶ 52), and that knowledge can be imputed to BP. <u>Plywood Mktg. Assocs.</u>, 16 Wn. App. at 575. Counterdefendants' motion to dismiss the fraud claims concerning Type 5 testing at these stations is DENIED.

Shalabi also sufficiently pleads common law, FIPA and GDBR fraud claims arising out of representations about the contamination at the Rainier Ave (#83035) and Covington (#83032) stations. Shalabi claims Strenk represented these stations were clean and uncontaminated in summer of 2008, but that there is evidence the stations were in fact contaminated. (Am. Answer ¶ 53.) Counterdefendants claim to have removed all contamination from both sites, making the statements that the sites were not contaminated in fact true. (Dkt. No. 69 at 15.) But the record is devoid of any confirmation of this assertion, and the Court cannot resolve this dispute of fact on a motion to dismiss. Strenk's alleged representation that these stations were not contaminated

therefore meets all of the fraud requirements for FIPA and the GDBR: (1) it was a representation of an existing fact; (2) material to Shalabi's purchase; (3) false; (4) unknown by Shalabi to be false; (5–6) justifiably relied on by Shalabi; and (7) damaged Shalabi. Shalabi has also alleged BP or its agents were aware of the contamination, which satisfies his common law fraud claim. The Court DENIES BP's motion to dismiss Shalabi's fraud claims concerning contamination at these stations.

In summary, Counterdefendants' motion to dismiss contamination claims is GRANTED as to Bonnie Lake (#83038), Olympia (#83036), Steel Street (#83035), Graham (#83033), 140th Renton (#83084), Kirkland, (#83086), and Redmond (#82942). Counterdefendants' motion to dismiss the fraud claims based on Type 5 testing at Redmond (#82942), Rainier Ave (#83035), and Covington (#83032) is DENIED. The motion to dismiss the contamination-based fraud claims for Rainier Ave (#83035) and Covington (#83032) is DENIED.

d. Gasoline Pricing

Shalabi pursues two claims of common law, FIPA, and GDBR fraud related to gasoline pricing, only one of which is adequately pleaded.

Shalabi sufficiently alleges Schott and DeShazo fraudulently induced him to purchase stations in summer and fall of 2009 on the representation that gasoline prices of different zones were primarily based on the cost of gasoline delivery to each zone. (Am. Answer ¶ 59.) Shalabi provides numerous prices that show gasoline prices do not correlate with distance. (Id. ¶ 60). Counterdefendants argue Shalabi cannot prove justifiable reliance because Shalabi knew of the zone pricing scheme prior to purchase from an incident where he was charged a higher price because of the zone scheme. (Dkt. No. 69 at 16.) However, this single incident a year prior to the purchase is not sufficient to preclude justifiable reliance. Shalabi either may not have

1  realized this was a common practice or believed that the pricing scheme was different for the

2  stations he was purchasing.  Either way, that issue cannot be decided on a motion to dismiss.

3  Counterdefendants' motion to dismiss the fraud claims concerning Schott and DeShazo's

4  statements regarding zone pricing is DENIED.  To the extent that Shalabi alleges other instances

5  of fraud against Scott and DeShazo, these allegations fail to separately inform them of the

6  allegations surrounding their alleged participation in the fraud and accordingly fail to meet the

7  requirements of 9(b).  <u>Swartz</u>, 476 F.3d at 764–765.  Those claims are DISMISSED, as requested

8  in the Third-Party Defendants' motion to dismiss.

9      Shalabi's claims regarding statements by Strenk and Cary that Shalabi would be charged

10  a reasonable price do not meet the pleading requirements for fraud.  Strenk and Cary allegedly

11  told Shalabi he would be charged a "bona fide" and "reasonable" wholesale price for the stations

12  he was purchasing.  (Am. Answer ¶ 59.)  The statements by Strenk and Cary were a promise for

13  a future performance and cannot sustain a fraud claim because they were not regarding an

14  "existing fact".  <u>Stiley</u>, 130 Wn.2d at 505.  The Court GRANTS Counterdefendants' motion to

15  dismiss the fraud claims concerning reasonable price based on alleged representations by Strenk

16  and Cary.

17          e.  <u>Gasoline Delivery</u>

18      Shalabi pursues two sets of claims of fraud under the common law, FIPA and GDBR in

19  relation to representations about the delivery of gasoline, both of which are dismissed.

20      Shalabi's claim that gasoline deliveries were either sped up or slowed down at his

21  expense is inadequately pleaded.  He does not provide any specific statements by

22  Counterdefendants concerning the allegation of BP delivering gasoline to maximize profits (Am.

23

24

Answer ¶ 73), and therefore fails to plead fraud with sufficient particularity. The motion to dismiss these fraud claims is GRANTED.

Shalabi's fraud claims that he was allowed to run out of gasoline and delivered commingled gasoline also fail to survive the 12(b)(6) motion to dismiss. Shalabi alleges that first, Strenk and Cary both told him in the fall of 2008 and 2009 that BP would not let his stations run out of gasoline (Am. Answer ¶ 73), and second, that Strenk and Cary told him gasoline would be provided from BP's Cherry Point refinery. (Id. at ¶ 80.) Again, both statements are a promise of a future performance and cannot be an "existing fact" as required for a fraud claim. Stiley, 130 Wn.2d at 505. Accordingly Counterdefendants' motion to dismiss Shalabi's fraud claims regarding running out of gasoline and comingled gasoline is GRANTED.

f. Tying Arrangements

The Court dismisses the common law, FIPA, and GDBR fraud claims Shalabi makes concerning tying arrangements. Shalabi provides two statements in support of these fraud claims. First, he alleges Cary and Strenk told him he would pay reasonable and competitive prices for in-store products. (Am. Answer ¶ 88.) This is a promise of a future performance and cannot sustain a fraud claim. Stiley, 130 Wn.2d at 505. Second, Shalabi alleges that Cary and Strenk told him that a certain payment method (Retalix) was a "state of art [sic] program to maximize profits." (Id. at ¶ 91.) Shalabi does not allege any facts that allow the Court to infer that this statement is plausibly false. Further, as the Court previously ruled, the Gasoline Agreements and ampm agreements appear to disclose all of the tying arrangements alleged by Shalabi and he alleges no facts that suggest otherwise. (Dkt. No. 64 at 7.) Accordingly, the motion to dismiss the fraud allegations surrounding the tying arrangements is GRANTED.

g.  BP Franchises Without ampm Stores

The Court dismisses the common law, FIPA, and GDBR fraud claims concerning BP's recent decision to allow gasoline franchises without an <u>ampm</u> store.  Shalabi claims that Strenk told him in the summer of 2008 that gasoline franchises would also have to be <u>ampm</u> franchises, but that gasoline-only franchises are now being allowed.  (Am. Answer ¶ 90.)  This is a promise of a future performance (not allowing gas-only franchises) and cannot sustain a fraud claim. <u>Stiley</u>, 130 Wn.2d at 505.  Further, Shalabi provides no factual allegations that these statements were false when made to Shalabi, providing only that "BPWCP is now abandoning the <u>ampm</u> model."  (<u>Id.</u> at 90.)  Given that nearly four years have passed since the alleged misrepresentation, and the change is only happening now, Shalabi fails to plead facts sufficient to show that Strenk's statement was plausibly false when he made it in 2008.  Accordingly, Counterdefendants' motion to dismiss this fraud claim is GRANTED.

C.  <u>CPA Claims</u>

Shalabi pursues three CPA claims, only one of which cannot proceed.

a.  <u>Legal Standard</u>

To prevail on a CPA claim, Shalabi must show: (1) an unfair or deceptive act or practice; (2) that occurs in trade or commerce; (3) a public interest; (4) injury in his business property; and (5) a causal link between the unfair or deceptive act and the injury suffered.  <u>See</u> <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778, 780 (1986).  Failure to satisfy even one of the elements is fatal to a CPA claim.  <u>Id.</u> at 794–95.

The Washington Legislature may designate certain conduct as being per se unfair or deceptive.  <u>See</u> RCW 19.86.093.  FIPA and the GDBR contain such definitions.  FIPA provides in relevant part that it is an unfair or deceptive practice to: (1) require a tying arrangement; (2) discriminate between franchisees; (3) sell, rent, or offer to sell a product for more than a fair and

reasonable price; and (4) as the franchisor, obtain a benefit from a person in business with the franchisee unless such benefit is disclosed. RCW 19.100.180(2)(b)–(e). The GDBR mirrors FIPA but (1) lacks the prohibition on a franchisor obtaining a benefit from an individual in business with the franchisee unless the benefit is disclosed; and (2) prohibits a franchisor from directly or indirectly setting the retail price of a franchisee's fuel. RCW 19.120.080(a)–(c); RCW 19.120.060. The CPA itself provides the sole cause of action to enforce violations of these provisions of the GDBR and FIPA. RCW 19.100.190(1) (FIPA), RCW 19.120.902 (providing that the GDBR be interpreted consistent with FIPA). Thus, Shalabi's invocation of the GDBR and FIPA unrelated to the fraud claims are actually CPA claims premised on violations of FIPA and the GDBR.

      b. <u>GDBR and FIPA Anti-Tying Claims</u>

Shalabi fails to sufficiently allege a violation of the CPA under the anti-tying provisions of FIPA and the GDBR.

FIPA and the GDBR prohibit BP from requiring "a motor fuel retailer to purchase or lease goods or services of the motor fuel refiner-supplier or from approved sources of supply unless and to the extent that the motor fuel refiner-supplier satisfies the burden of proving that such restrictive purchasing agreements are reasonably necessary for a lawful purpose justified on business grounds, and do not substantially affect competition . . . ." RCW 19.100.180(2)(b); RCW 19.120.080(2)(a). This provision states that whether something is unfair or deceptive is to be guided by federal anti-trust laws. <u>Id.</u>

As before, to prevail on a tying claim, Shalabi must allege that (1) BP tied together the sale of two distinct products or services; (2) BP possesses enough economic power in the tying product market to coerce Shalabi into purchasing the tied product; and (3) the tying arrangement

affects a "not insubstantial volume of commerce" in the tied product market.  <u>Rick-Mik Enters., Inc. v. Equilon Enters., LCC</u>, 532 F.3d 963, 971 (9th Cir. 2008) (quotation omitted).  "[T]ies are prohibited where a seller 'exploits,' 'controls,' 'forces,' or 'coerces' a buyer of a tying product into purchasing a tied product."  <u>Id</u> (citation omitted).  "[I]n all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product."  <u>Illinois Tool Works Inc. v. Indep. Ink</u>, 547 U.S. 28, 46 (2006).   In <u>Rick-Mik Enters.</u>, the Ninth Circuit dismissed a similar claim with far more factual support that a company was an "important player" in the petroleum industry.  532 F.3d at 977.  The Ninth Circuit has also held that "where the defendant's 'power' to 'force' plaintiffs to purchase the alleged tying product stems not from the market, but from plaintiffs' contractual agreement to purchase the tying product, no claim will lie."  <u>Queen City Pizza, Inc., v. Domino's Pizza, Inc.</u>, 124 F.3d 430, 443 (9th Cir. 1997).

Shalabi's CPA tying claims are inadequately pleaded.  Nowhere in the counterclaim has Shalabi explained what the relevant market is or BP's coercive power.  He leaves that to the Court, which is inadequate to state a claim.  Similarly, the ability to coerce appears to stem from a contractual agreement, which forecloses a tying claim.  <u>Queen City</u>, 124 F.3d at 443. Counterdefendants' motion to dismiss the CPA claims premised on tying arrangements in violation of FIPA and the GDBR is GRANTED.

c.  <u>GDBR and FIPA Discrimination Claims</u>

Shalabi sufficiently alleges that BP's disparate policies concerning gasoline-only franchisees and gasoline/<u>ampm</u> franchisees violate the discrimination provision of FIPA and the GDBR.

FIPA and the GDBR prohibit a gasoline supplier from "[d]iscriminat[ing] between franchisees in the charges offered or made for royalties, goods, services, equipment, rental, advertising services, or in any other business dealing. . . ." RCW 19.100.180(2)(c); RCW 19.120.080(2)(b). To survive a motion to dismiss, it is sufficient under FIPA to allege that two franchises from the same franchisor are subject to different sets of standards. Danforth & Assocs., Inc. v. Coldwell Banker Real Estate, LLC, C10-1621JCC, 2011 WL 338798, at *3 (W.D. Wash. Feb. 3, 2011). Counterdefendants encourage the Court to look to federal law and require facts that support finding that the favored franchisees compete with Shalabi (Dkt. No. 69 at 22–23), but unlike the tying provisions, such language is not present in the discrimination provisions of FIPA and the GDBR.

Shalabi has alleged facts suggesting that the gasoline-only franchisees are treated differently, including having the ability to buy indoor merchandise at a lower price and not being compelled to participate in allegedly costly advertising and sales campaigns. (Am. Answer ¶ 90.) These allegations are sufficient to survive dismissal. See Danforth, 2011 WL 338798, at *3. Counterdefendants' motion to dismiss Shalabi's FIPA and GDBR discrimination claims regarding gasoline-only franchisees is DENIED.

### d. GDBR and FIPA Reasonable Price Provisions

Shalabi sufficiently alleges a violation of the GDBR and FIPA reasonable price provisions as to certain in-store prices for products. FIPA and the GDBR state that it is unlawful to "sell, rent, or offer to sell . . . any product or service for more than a fair and reasonable price." RCW 19.120.080 (2)(c), RCW 19.100.180(2)(d).

Counterdefendants only seek dismissal of broad claims by Shalabi as to unidentified products, ceding that Shalabi has sufficiently pled claims related to the unreasonable prices set

for gasoline, beer, soda, salty snacks, and tobacco. (Dkt. No. 69 at 23.) Shalabi's vague claims

concerning unnamed products do not provide sufficient detail to satisfy Rule 8, and the Court

GRANTS the motion to dismiss these CPA claims.

### D.  FIPA Anti-Kickback Provision

Shalabi fails to sufficiently allege Counterdefendants violated the anti-kickback provision

of FIPA, RCW 19.100.180(2)(e). This provision prohibits a franchisor from benefiting from an

individual that does business with the franchisee unless that relationship is disclosed. See, e.g.,

Nelson v. Nat'l Fund Raising Consultants, Inc., 120 Wn.2d 382, 388–89 (1992).

Shalabi provides only conclusory allegations as to the allegedly high prices and existence

of a binding contract for certain products as evidence that a kickback is taking place. (Am.

Answer ¶ 93.) While the existence of kickbacks is certain possible, by failing to provide any

supporting facts Shalabi has failed to show his kickback claims are plausible. Additionally, as

Counterdefendants point out, Shalabi fails to address the kickback claim in his response to

Counterdefendants' motion to dismiss. (Dkt. No. 74 at 14.) This serves as an admission that the

motion itself has merit. Local Rule CR 7(b)(2). Counterdefendants' motion to dismiss this CPA

claim is GRANTED.

### E.  GDBR Zone Pricing Claim

Shalabi sufficiently alleges that BP's pricing practices violate RCW 19.120.060. This

statute provides that no gasoline supplier may "set or compel, directly or indirectly, the retail

price at which the motor fuel retailer sells motor fuel or other products to the public." RCW

19.120.060.

Shalabi argues that BP set his prices by taking "punitive actions" against him when he

refused to accept BP's prices. (Am. Answer ¶ 64.) He also claims BP has a "cost formula" that

effectively sets the retail price for a particular zone. (Id.) BP allegedly requires its ARCO

1 dealers to sell gas at a rate lower than the major competitors and it sets the profit margin a dealer

2 can charge. (<u>Id.</u>) BP then sets the wholesale price based on the three lowest competitors' street

3 price, which effectively dictates the retail price of the gasoline Shalabi sells. (<u>Id.</u>) By alleging a

4 cost formula that effectively sets his retail prices, and further alleging that BP punishes him for

5 deviating from this formula, Shalabi has alleged a CPA violation. The motion to dismiss this

6 claim is DENIED.

7     F. <u>Breach of Contract</u>

8         Counterdefendants seek dismissal of all of the breach of contract claims other than those

9 related to the timely delivery of gasoline and paragraph 17.3, which the Court previously

10 declined to dismiss. Dismissal is appropriate.

11         First, Shalabi erroneously claims that he has the right to terminate the Gasoline Dealers

12 Agreement pursuant to paragraphs 17.1 and 17.2. (Am. Answer ¶ 41.) The Court previously

13 dismissed this breach of contract claim and Shalabi fails to allege sufficient new facts to survive

14 dismissal. Essentially, Shalabi has seized on a paragraph 17.3 of the Agreement, which does

15 suggest he can terminate the contract. He erroneously argues that the conditions set forth in

16 paragraphs 17.1 and 17.2, which allow BP to terminate the contract, also apply to him. Shalabi's

17 reading impermissibly stretches the contractual language and the duty itself, which "requires

18 only that the parties perform in good faith the obligations imposed by their agreement." <u>Doyle v.

19 Nutrilawn U.S., Inc.</u>, C09-0942JLR, 2010 WL 1980280, at *8 (W.D. Wash. May 17, 2010). The

20 Court again DISMISSES this claim.

21         Second, Shalabi fails to plausibly allege a breach of contract claim premised on the

22 theory that Counterdefendants' alleged violation of the CPA, the GDBR, and FIPA also violates

23 the duty of good faith and fair dealing. The duty of good faith does not operate to create rights

24

not contracted for. <u>Badgett v. Sec. State Bank</u>, 116 Wn.2d 563, 569 (1991). Without pointing to any specific contractual provisions that a particular state law violation breaches, Shalabi has not stated a claim for breach of contract. The Court GRANTS Counterdefendants' motion to dismiss the breach of contract claims premised on violations of the CPA, FIPA, and GDBR.

Third, Shalabi incorrectly argues BP failed to provide ARCO-branded gasoline to him and thus breached the Gasoline Dealers Agreements. (Am. Answer ¶ 81.) Shalabi claims that the Gasoline Dealers Agreement does not allow the commingling of gasoline and that the gasoline must be refined at BP's Cherry Point facility and points to recital A, paragraphs 2, 4, and 8. (<u>Id.</u>) The Dealer Agreement only states that BP would provide Shalabi with gasoline bearing an ARCO trademark, and says nothing about commingling or provenance. (Dkt. No. 1, Ex. 1, 1–3.) Shalabi does not allege he was ever provided a product that did not bear an ARCO trademark. Accordingly, Counterdefendants' motion to dismiss this breach of contract claim is GRANTED.

Fourth, Shalabi fails to plausibly allege breach of contract regarding the ability of franchisees to set gasoline prices. He claims paragraph 5 of the Gasoline Dealers Agreement and the implied duty of good faith and fair dealing bar BP from setting gas prices in the manner it does. (Am. Answer ¶ 71.) Paragraph 5 of the Gasoline Dealers agreement provides that Shalabi will pay the price specified by BP and it is subject to change at any time without notice. (Dkt. No. 1, Ex. 1 at 2.) And, again, the duty of good faith does not operate to create rights not contracted for. <u>Badgett</u>, 116 Wn.2d at 563. Shalabi fails to show how gasoline pricing violates paragraph 5 of the Gasoline Dealers Agreement. The Court GRANTS the motion to dismiss on this claim.

Fifth, Shalabi fails to plausibly allege that Third-Party Defendants Schott and DeShazo are liable for the surviving breach of contract claims. Under Washington law "it is a well-established rule that a complaint against a known agent, acting within the scope of his authority for a disclosed principal, fails to state a claim upon which relief may be granted against the agent." Davis v. Bafus, 3 Wn. App. 164, 167 (1970). Shalabi fails to allege facts showing Schott and DeShazo were acting as agents for BP within the scope of their authority. The Court GRANTS the motion to dismiss Shalabi's breach of contract claims against Schott and DeShazo.

G. Equitable Counterclaims

Defendants incorrectly argue that Shalabi's equitable counterclaims should be dismissed because they are implied-in-contract and therefore barred by existence of actual contracts.

Generally, "[a] party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract." Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591, 604 (1943). Shalabi's money had and received and unjust enrichment claims are based on quasi contract or implied contract principles. Coast Trading Co., Inc. v. Parmac, Inc., 21 Wn. App. 896, 902 (1978) (money had and received); McDonald v. Hayner, 43 Wn. App. 81, 85 (1986) (unjust enrichment). However, even if a contract does exist, "a claim for unjust enrichment may survive a motion to dismiss if a plaintiff challenges the validity of the contract." Vernon v. Qwest Commc'ns Int'l, Inc., 643 F. Supp. 2d 1256, 1267 (W.D. Wash. 2009).

Shalabi alleges he was fraudulently induced to purchase the gasoline stations and enter into the franchise agreements, making them invalid. (Dkt. No. 71 at 14.) Counterdefendants only argue that Shalabi cannot bring equitable counterclaims concerning matters in the contract and ignore that Shalabi is contesting the validity of the actual contracts themselves. (Dkt. No. 74

at 14.)  Swartz, cited by Counterdefendants, is inapplicable because, unlike Shalabi, the party

claiming unjust enrichment was not contesting the validity of the contract itself.  Swartz v.

Deutsche Bank, C03-1252MJP, 2008 WL 1968948 (W.D. Wash. May 2, 2008).  Accordingly,

because Shalabi is challenging the validity of the contracts in question, the Court DENIES

Counterdefendants' motion to dismiss the equitable counterclaims.

Further, "under Washington law, constructive trust is an equitable remedy imposed by the

court at law, principally to prevent unjust enrichment."  Malone v. Clark Nuber, P.S., No. C07-

2046RSL, 2008 WL 2545069, at *13 (W.D. Wash. June 23, 2008).  Because Shalabi's equitable

counterclaims survive, a constructive trust may be appropriate and the Court DENIES

Counterdefendants' motion to dismiss Shalabi's plea for a constructive trust.

Shalabi's request for a resultant trust is not sufficiently plead.  A resultant trust can occur

when a person transfers property not intending that the person taking or holding the property

should have its beneficial interest.  Thor v. McDearmid, 63 Wn. App. 193, 205 (1991).  Shalabi

does not provide any facts that he did not intend the beneficial interest of transfer to accrue to

Counterdefendants, and the Court GRANTS Counterdefendants' motion to dismiss Shalabi's

request for a resultant trust.

H.  Conversion

Shalabi's claim for conversion is not adequately pleaded.

Shalabi establishes conversion if (1) he was entitled to possess the chattle, (2) he was

deprived of such possession, (3) due to the defendant's willful interference, and (4) such

interference was not justified.  Exxon Mobil Corp. v. Freeman Holdings of Washington, LLC,

779 F. Supp. 2d 1171, 1178 (E.D. Wash. 2011).

Shalabi broadly alleges that "BPWCP took moneys belonging to [Shalabi] without permission or right to do so," and he incorporates the entirety of his amended answer in support of this claim. (Am. Answer ¶¶ 124–25.) It is therefore unclear which conduct specifically supports his conversion claim. Counterdefendants' seek dismissal on the grounds that Shalabi is only bringing a conversion claim concerning matters established in the contract. (Dkt. No. 69 at 27.) Shalabi failed to reply to Counterdefendants' argument, (Dkt. no. 74 at 14), which serves as an admission that the motion has merit. Local Rule CR 7(b)(2). Because Shalabi does not point to any conduct outside of the matters governed by the contract in reply to Counterdefendants' motion to dismiss, the Court GRANTS the motion to dismiss.

### I. Declaratory Judgment

Counterdefendants' motion to dismiss Shalabi's declaratory judgment claims are raised for the first time on reply and are therefore improper. Counterdefendants did not seek dismissal of these claims in their motion to dismiss (Dkt. No. 69 at 24), and arguments cannot be raised properly for the first time on reply. Amazon.com LLC v. Lay, 758 F. Supp. 2d 1154, 1171 (W.D. Wash. 2010). Accordingly, the Court DENIES Counterdefendants' motions to dismiss Shalabi's declaratory judgment claims.

### J. Leave to Amend

Shalabi has not sought leave to amend and this is his second attempt at stating valid counterclaims. Only as to Shalabi's claim for resultant trust is leave to amend granted. The Court did not previously consider the adequacy of that claim, and so leave to amend is granted. If Shalabi chooses to replead this claim, he must do so within 15 days of entry of this order. The Court does not allow any further amendment on any other counterclaims.

\\

\\

**Conclusion**

Third-Party Defendants' motion to dismiss is GRANTED as to Fry and Motley for a lack of personal jurisdiction because neither of them has sufficient "minimum contacts" with the state of Washington. The Third-Party Defendants' motion to dismiss is GRANTED as to Cary, who Shalabi failed to timely serve. The motion is DENIED as to the single fraud claim tied to DeShazo and Schott.

The Court GRANTS in part and DENIES in part BP's motion to dismiss. Several of Shalabi's fraud claims must be dismissed because they rely on a promise to perform a future act or public records foreclose justifiable reliance. Shalabi sufficiently alleges CPA claims premised on FIPA and GDBR violations, but he fails to sufficiently allege facts that would make an anti-tying violation plausible. Shalabi also does not provide sufficient factual allegations for an anti-kickback violation of FIPA to be plausible. Shalabi fails to remedy any of his breach of contract claims previously dismissed by the Court because the duty of good faith cannot create additional duties beyond the express terms of the contracts themselves. Dismissal of Shalabi's equitable counterclaims is unwarranted because Shalabi is challenging the validity of the contracts at issue, but he has failed to plead an adequate request for constructive or resultant trust. Dismissal of Shalabi's conversion claim is also warranted. Finally, the Court cannot address BP's motion to dismiss Shalabi's declaratory judgment claims because this issue was raised for the first time in Counterdefendants' reply.

\\

\\

\\

\\

The clerk is ordered to provide copies of this order to all counsel.

Dated this 14th day of June, 2012.


_____
Marsha J. Pechman
United States District Judge