1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10    BP WEST COAST PRODUCTS, LLC,                CASE NO. C11-1341 MJP

11                         Plaintiff,             ORDER GRANTING MOTION FOR
                                                  SUMMARY JUDGMENT
12            v.

13    HATEM SHALABI, et al.,

14                         Defendants.

15

16           This matter comes before the Court on Plaintiff BP West Coast Products, LLC

17    (BPWCP)'s motion for summary judgment. (Dkt. No. 126.) Defendants Hatem Shalabi

18    ("Shalabi") and Harbor Olympic Land, LLC, et al., (collectively, "Shalabi Entities") filed an

19    untimely response. (Dkt. No. 136.) In their reply, BPWCP asks the Court to strike the response

20    because it is untimely. (Dkt. No. 146 at 1.) The Court notes it is within its discretion to strike the

21    response, however, because of the dispositive nature of this motion the Court considered all

22    papers and related documents filed and GRANTS the motion for summary judgment.

23

24

1 <u>**Background**</u>

2        BPWCP brought this suit in August of 2011 against Defendants alleging several causes

3 of action, and now seeks summary judgment on the actions for breach of contract, breach of

4 guaranties, declaratory judgment. (Dkt. No. 126.) BPWCP is engaged in the marketing and

5 distribution of motor fuel in the State of Washington and elsewhere in the United States. (Dkt.

6 No. 1 at 9.) BPWCP sells ARCO brand motor fuels to franchisees, and at certain properties

7 offers <u>ampm</u> mini market convenience stores to be operated with the gasoline stations. (<u>Id</u>.)

8 Shalabi and the Shalabi Entities purchased or leased 23 stations from Plaintiff, 16 of which are at

9 issue in this lawsuit. (Dkt. No. 126 at 2.)

10        Thirteen of the properties at issue were transferred by way of a Special Warranty Deed

11 that imposed use restrictions. (<u>Id</u>. at 3.) In addition to the property sales, BPWCP sold some of

12 its retail operations to each of the 16 Shalabi Entities on the condition they enter into ARCO

13 Gasoline Dealer Agreements ("GDAs"), which granted BPWCP the exclusive right to supply

14 gasoline for 20 years. (<u>Id</u>. at 4.) The GDAs included the sublease for the property and the motor

15 fuel supply agreement. (<u>Id</u>.) BP also entered into 16 franchise agreements referred to as "<u>ampm</u>

16 Agreements," although two of the properties intended to have an <u>ampm</u> store ultimately did not

17 have one and those two agreements (sites 82942 and 83038) are not relevant here. (<u>Id</u>.) BPWCP

18 alleges they sold the stations to Shalabi and the Shalabi Entities for substantially less than their

19 market value in anticipation of the consideration they would receive from Defendants' continued

20 purchase of their gasoline for the term of the GDAs and <u>ampm</u> Agreements (collectively,

21 "Franchise Agreements"). (Dkt. No. 126 at 5.)

22        For each Franchise Agreement between BPWCP and the Shalabi Entities, Shalabi

23 executed a separate Guaranty Agreement with BPWCP, providing the individual Defendant

24

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 2

Hatem Shalabi "irrevocably, fully and unconditionally" guaranteed to BPWCP "full and prompt performance and payment when due" of "any and all of the obligations" the Shalabi Entities may owe to BPWCP. (see, e.g., Dkt. No. 128-4 at 2.) These Guaranties provide if the Shalabi Entities fail to pay, BPWCP has the right to recover from Shalabi personally. (Id. at 3-4.)

BPWCP alleges Defendants breached their franchise agreements and Guaranties, and violated Deed Restrictions for the properties at issue.  BPWCP claims beginning in September 2010, Defendants began having difficulties paying for gasoline deliveries, and BPWCP began providing gasoline on credit which Defendants retained and resold to consumers. (Dkt. No. 1 at 18.) Defendants also began falling behind on royalty payments. (Id.) BPWCP further alleges Defendants breached the Franchise Agreements by failing to make available for sale all grades of gasoline in an amount sufficient to satisfy customer demand, selling unbranded gasoline, and failing to comply with branding requirements. (Id. at 19-20.) BPWCP also argues the resulting operation of unbranded gasoline stations and minimarts violates the Deed Restrictions on the properties. (Id. at 24.)

BPWCP claims it is (1) entitled to summary judgment against the Shalabi Entities for breach of the GDAs and ampm Agreements, (2) entitled to summary judgment against Shalabi for breach of the Guaranties, and (3) entitled to a declaratory judgment that the Deed Restrictions on the properties are enforceable. (Dkt. No. 126 at 10-14.) In their response, Defendants do not dispute the existence or contents of the GDAs, ampm Agreements, Guaranties, or Deed Restrictions. (Dkt. No. 136.) Instead they argue, (1) Shalabi has no personal liability for breach of the Guaranties because they were executed separately and before the Franchise Agreements and Deed of Trust and thus were made without consideration, (2) Plaintiff is not entitled to declaratory relieve because the Deed Restrictions contain no enforcement mechanism and are

1   therefore unenforceable, and (3) there is a discrepancy between the amount of damages sought in

2   Plaintiff's complaint and the amount requested on summary judgment, and this is an issue of

3   material fact precluding summary judgment. (Id. at 2-7.)

**Analysis**

5   I.      Untimely Filing

6       A district court has discretion not to accept untimely filings. Lujan v. Nat'l Wildlife Fed'n,

7   497 U.S. 871, 895 (1990).  A court may extend a deadline after the time has expired "on motion

8   made . . . if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "To

9   determine whether neglect is excusable, a court must consider four factors: (1) the danger of

10  prejudice to the opposing party; (2) the length of the delay and its potential impact on the

11  proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith."

12  Petrone v. Veritas Software Corp., 496 F.3d 962, 973 (9th Cir. 2007)(citations omitted).

13      The Court finds the prejudice to the opposing party minimal. Although Plaintiff's time to

14  reply was reduced by half, Plaintiff was able to submit a timely reply. Likewise, the length of

15  delay did not impact the proceedings in this case. The cited reason for delay, confusion over

16  whether local counsel or former pro hac vice counsel would be responding to the motion and

17  lack of access to relevant documents, is unacceptable. (Dkt. No. 139 at 2.) It is also indicative of

18  bad faith. Local Counsel has already been instructed by this Court he must play an active role in

19  this litigation. (Dkt. No. 124 at 4.) It is unclear to the Court why, under these circumstances,

20  Local Counsel would be without access to documents central to this case. For this reason the

21  delay appears in bad faith.

22

23

24

1       With the 9th Circuit factors weighing evenly in favor of consideration of the response and

2 striking it, the Court opts to consider Defendants' response. Because this motion is dispositive, it

3 is in the interest of justice to consider the response.

4     II.     Standard for Summary Judgment

5       Summary judgment is warranted if no material issue of fact exists for trial.  Warren v. City of

6 Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The underlying

7 facts are viewed in the light most favorable to the party opposing the motion.  Matsushita Elec.

8 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment will not lie if .

9 . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

10 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary

11 judgment has the burden to show initially the absence of a genuine issue concerning any material

12 fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  If the moving party makes this

13 showing, the burden shifts to the nonmoving party to establish the existence of an issue of fact

14 regarding an element essential to that party's case, and on which that party will bear the burden

15 of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  To discharge this

16 burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence

17 showing that there is a genuine issue for trial.  Id. at 324.

18     III.    Breach of GDAs and ampm Agreements

19       The Parties do not dispute the existence or content of the GDAs and ampm agreements.

20 Defendants' only argument with respect to these agreements is Plaintiff's motion for summary

21 judgment requests more damages than what was specified in the Complaint, and this creates a

22 factual issue precluding summary judgment. (Dkt. No. 136 at 7.)

23

24

1        There is no issue of material fact stemming from the discrepancy in the damages listed in the

2    Complaint and the motion for summary judgment. Defendants concede they owe Plaintiff

3    $1,363,300.59. (Id., and Dkt. No. 138 at 2, confirming a figure of $1,363,300.39.) The figure of

4    $1,363,300.39 is consistent with the amount listed in Plaintiff's Complaint. (Dkt. No. 1 at 26.)

5    The Complaint lists this amount as the unpaid amount "currently due and owing" and goes on to

6    allow for "additional damages" to be proven at trial. (Id. at 27.)

7        Plaintiff claims damages in its motion for summary judgment of $1,395,538.18. (Dkt. No.

8    126 at 12.) Both Parties submit declarations regarding damages; Defendants submit the Foss

9    Declaration (Dkt. No. 138) and Plaintiff the Swinson Declaration (Dkt. No. 129.). Exhibit 4 of

10   Defendants' Foss Declaration "shows all the activity for the actual unpaid gas and royalty

11   amounts BP claims" and totals $1,326,180.12. (Dkt. No. 138 at 3, Dkt. No. 138-4 at 3.) This is a

12   discrepancy from the amount claimed in the summary judgment motion of $69,358.06. Plaintiff

13   explains the discrepancy by acknowledging it has retained credits owed to Defendants it did not

14   apply to the amount of damages claimed. (Dkt. No. 129 at 5.) These credits include $29,124.35

15   to Site 82431 and $40,233.71 to Site 82941. (Id. at 6.) The credits total $69,358.06, accounting

16   for the discrepancy in the Parties' numbers. Plaintiff acknowledges it owes Defendants these

17   sums, but this does not erase or reduce the total owed to Plaintiff. There is no issue of fact with

18   regard to damages, and summary judgment for breach of the Franchise Agreements is

19   GRANTED in favor of Plaintiff.

20       IV.    Breach of Guaranties

21       Defendants argue Mr. Shalabi is not personally liable under the Guaranties he executed

22   because they "were signed by Mr. Shalabi in his personal capacity long before" any other real

23   estate transactions or franchise agreements were finalized. (Dkt. No. 136 at 3.) Because of this,

24

1   Defendants claim the Guaranties are unenforceable for lack of consideration. (Id.) Plaintiff

2   responds the affirmative defense of lack of consideration was waived, or alternatively, the

3   Guaranties are supported by consideration. (Dkt. No. 146 at 6-7.)

4       a.   Waiver

5       If an affirmative defense is not pleaded in an answer, it is generally waived. Morrison v.

6   Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005), Fed. R. Civ. P. 8(c)(1).  Defendants raised the

7   affirmative defense of lack of consideration in their Amended Answer, although not clearly in

8   reference to the Guaranties. (Dkt. No. 67 at 6.) The Amended Answer seems to allege lack of

9   consideration as an affirmative defense to Plaintiff's claims for breach of the Franchise

10  Agreements. (Id.) Despite the vague nature of the Amended Answer on this point, the Court

11  finds the affirmative defense not waived. A reasonable reader could interpret the affirmative

12  defense as being raised broadly to reach the Guaranties. Further, to the extent the consideration

13  for the Franchise Agreements and the consideration for the Guaranties amount to the same thing,

14  the Amended Answer could be read as applying to the Guaranties.

15      b.   Failure of consideration

16      "The contract of guaranty is an undertaking or promise on the part of one person which is

17  collateral to a primary or principal obligation on the part of another, and which binds the obligor

18  to performance in the event of any nonperformance by such other, the latter being bound to

19  perform primarily." Robey v. Walton Lumber Co., 17 Wn.2d 242, 255 (1943), quoting 24 Am.

20  Jur. 873-4, § 2.  A guaranty executed after the creation of the principal obligation is founded on

21  the consideration of the original contract where the original contract was induced by or created

22  on the faith of the guaranty. Universal C.I.T. Credit Corp v. De Lisle, 47 Wn. 2d 381, 321

23  (1955). Consideration moving to the principal alone, contemporaneous with or subsequent to the

24

1  promise of the guarantor, is sufficient to support the guaranty. Id. at 322. A guaranty may by its

2  own terms nominate the consideration for which it is given. F.C. Palmer & Co. v. Chaffee, 129

3  Wash. 408, 412 (1924).

4      A guaranty "should not be given an unfair and strained interpretation to restrict or diminish

5  the guarantor's obligation." Francher Cattle Co. v. Cascade Packing, 26 Wn. App. 407, 401

6  (1980).  Defendants cite Freestone Capital Partners, LP v. MKA Real Estate Opportunity Fund I,

7  LLC, 155 Wn. App. 643, 659 (2010) for the proposition that guaranties are separate contracts

8  existing independently from the original obligations between the principal obligor and the

9  obligee. While this language is correct, Freestone Capital was speaking in terms of the

10  application of a choice of forums clause, not in terms of consideration.

11      Defendants' reliance on Gelco IVM Leasing Co. v. Alger, 6 Wn. App. 519, 523 (1972) is

12  also mislaid. This case does say if a guaranty "is made independently of the main debt, it must

13  have a separate and distinct consideration and, accordingly, a past transaction or executed

14  consideration will not support a contract of guarantee" unless one of several exceptions are met.

15  Id. This should not be read to upset the basic purpose of a guaranty, which is to aid in inducing

16  the creditor to participate in the underlying obligation. The part of the Gelco opinion Defendants

17  rely on is directed at guarantees entered after the underlying contract was made and possibly

18  executed. Gelco holds, "Where, as here, [the creditor] made no request of the guarantors for a

19  promise of guaranty prior to the execution of the lease . . . a promise of guaranty cannot be

20  implied nor was one, in fact, established." Id.

21      Defendants' assertion the Guaranties were made independently from the main debt and

22  therefore not supported by consideration is untenable. The Guaranties contemplate the

23  consideration they are supported by. For example, the Guaranty for Site 83034 states, "In order

24

1    to induce [BPWCP] . . . to enter into or continue a Contract Dealer Gasoline Agreement and the

2    am/pm Mini Market Agreement (collectively, the "Franchise Agreement"), as amended from

3    time to time, with  Harbor Olympic Land 5816, LLC ("Debtor"), and for other good value and

4    consideration" the undersigned Hatem Shalabi ". . . unconditionally guaranties to BP the full and

5    prompt performance and payment when due" by the Shalabi entitiy at issue. (Dkt. No. 128-4 at

6    16.) The Guaranties all have language to this effect. The fact that the Guaranties were entered

7    into before the Franchise Agreements supports, rather than calls into question, the notion the

8    bargain struck in the Franchise Agreements was intended to be consideration for the Guaranties.

9    Summary judgment is GRANTED in favor of Plaintiff on the breach of Guaranties claim.

10          V.      Declaratory Judgment on Deed Restrictions

11          Plaintiff seeks a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, that

12   the Deed Restrictions on the properties at issue are enforceable restrictive covenants and

13   Defendants' actions in operating unbranded gasoline service stations and convenience stores

14   violates the Deed Restrictions. (Dkt. No. 1 at 26.) Defendants claim Plaintiff is not entitled to

15   declaratory judgment because (1) the deeds contain no enforcement mechanisms for the Deed

16   Restrictions so BPWCP has no residual or reversionary interests in the properties, (2) the Deed

17   Restrictions do not run with the land and will terminate with the 20-year contracts between the

18   Parties, such that they cannot bind successors in interest after the expiration of that term, and (3)

19   because BPWCP claims the Deed Restrictions are easements in gross they cannot bind

20   successors in interest under Washington law. (Dkt. No. 136 at 5.) Defendants' second two

21   arguments are unripe and not relevant to this case. Plaintiff is seeking a declaratory judgment on

22   the validity of the Deed Restrictions as applied to Defendants and their current use and

23

24

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 9

1    possession of the properties at issue. (Dkt. No. 146 at 8.) The Court will only consider

2    Defendants' first argument.

3        a.   Declaratory judgment standard

4        The Declaratory Judgment Act allows a court to recognize a plaintiff's right even where no

5    immediate enforcement is sought, and further relief based on the declaratory judgment may be

6    granted whenever necessary or proper. Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S.

7    293, 300 (1943). To determine whether declaratory judgment is appropriate, a district court must

8    determine (1) whether an actual case or controversy exists, and (2) whether the court should

9    exercise its discretion to award declaratory relief. Principal Life Ins. Co. v. Robinson, 394 F.3d

10   665, 669 (9th Cir. 2005).

11       "[T]he appropriate standard for determining ripeness of private party contract disputes is the

12   traditional ripeness standard, namely, whether 'there is a substantial controversy, between parties

13   having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

14   declaratory judgment." Id. at 671, quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312

15   U.S. 270, 273 (1941). The Parties here do not dispute an actual case or controversy exists

16   between them. Plaintiff asserts multiple claims against Defendants for breach of contract and

17   failure to comply with the Deed Restrictions, and Defendants allege the Deed Restrictions are

18   unenforceable and void. (Dkt. No. 126 at 15, Dkt No. 136 at 5.) There is an actual case or

19   controversy on the issue of the Deed Restrictions, and this prong of the declaratory judgment test

20   is met.

21       In determining whether a district court should exercise its discretion to issue a declaratory

22   judgment the court should consider the factors set out in Brillhart v. Excess Ins. Co., 316 U.S.

23   491 (1942). Principal Life Ins. Co., 394 F.3d at 669. The Brillhart factors state, "(1) the district

24

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 10

1    court should avoid needless determination of state law issues, (2) it should discourage litigants

2    from filing declaratory judgment actions as a means of forum shopping, and (3) it should avoid

3    duplicitous litigation." Id. at 672 (citations omitted). The 9th Circuit laid out additional factors,

4    including (1) whether the judgment will serve a useful purpose in clarifying and settling the legal

5    relations at issue, (2) whether it will afford relief from the uncertainty, insecurity and controversy

6    giving rise to the proceeding, (3) whether it will settle all aspects of the controversy, (4) whether

7    it is being sought for procedural fencing or to obtain a res judicata advantage, (5) whether it will

8    result in entanglement between the federal and state court systems, (6) convenience of the

9    parties, and (7) availability and convenience of other remedies. Principal Life Ins. Co., 394 F.3d

10   at 672.

11           Defendants do not argue any of the factors articulated by the 9th Circuit weigh against

12   this Court issuing a declaratory judgment. All factors favor the Court exercising its discretion to

13   act. This case was filed in this Court and a declaratory judgment will not create entanglement

14   with state courts, and there is no forum shopping issue. (Dkt. No. 126 at 17.) Settling this

15   controversy by declaratory judgment will promote judicial economy, clarify the rights and

16   obligations of the Parties, and be to the ultimate convenience of all Parties involved. An analysis

17   of all factors weighs in favor of issuing a declaratory judgment on the Deed Restrictions.

18           b.   Enforceability

19           Defendants' only ripe argument against this Court issuing summary judgment on the

20   Deed Restrictions claim is the deeds contain no enforcement mechanisms so BPWCP has no

21   residual or reversionary interest in the properties. (Dkt. No. 146 at 8.) They claim this makes the

22   Restrictions void. Defendants rely on Alby v. Banc One Financial, 119 Wn. App. 513 (2003),

23   which says "[i]t is generally accepted that a stipulation in a conveyance restricting the grantee's

24

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 11

1   right to sell or dispose of the property is ineffective in the absence of a provision for reversion,

2   limitation over, or the like." <u>Alby</u>, 119 Wn. App. at 521 (emphasis omitted).  Defendants'

3   reliance on <u>Alby</u> is misplaced. <u>Alby</u> speaks to restraints on alienation, not restrictive covenants.

4   <u>Id</u>. at 516. Plaintiff does not assert and the Deed Restrictions do not suggest an intent to restrain

5   alienation, rather, they restrict the way the properties can be used. (Dkt. No. 146 at 8.)

6        Defendants do make an argument related to use restrictions, citing <u>King County v.</u>

7   <u>Hanson Inv. Co.</u>, 34 Wn.2d 112 (1949) for the proposition that a deed containing use restrictions

8   in recitals without any built-in enforcement mechanism will be construed as "giving rise, at most,

9   to an implied covenant that the grantee will use the property only for the specified purpose."

10  <u>King County</u>, 34 Wn.2d at 119. They claim this means without specific language referring to an

11  enforcement mechanism, the Deed Restrictions are unenforceable. This argument fails for at

12  least two reasons.

13       First, the Deed Restrictions were incorporated by specific reference in the special

14  warranty deed signed by Defendants and they do, by their own terms, contemplate a remedy for

15  breach. (<u>See</u>, Dkt. No. 128-1 at 2.) The Deed Restrictions say:

16       Grantee acknowledges that the breach of any of the covenants or restrictions
         contained in this Exhibit "B" on the part of Grantee will result in irreparable harm
17       and continuing damages to Grantor and Grantor's business, and that Grantor's
         remedy at law for any such breach or threatened breach would be inadequate.
18       Accordingly, in addition to such remedies as may be available to Grantor at law
         or in equity in the event of any such breach, any court of competent jurisdiction
19       may issue an injunction   (both preliminary and permanent), without bond,
         enjoining and restricting the breach or threatened breach of any such covenant or
20       restriction by Grantee.

21  (<u>Id</u>. at 15.) The language in <u>King County</u> does not contradict the enforceability of the

22  Deed Restrictions because they have a built-in enforcement mechanism of injunction.

23  Although Plaintiff says in its motion it is not seeking enforcement at this time, the

24

1   remedy it seeks in its complaint is exactly the remedy contemplated by the Restrictions:

2   permanent injunction. (Dkt. No. 1 at 26.)

3       Second, <u>King County</u> is about the creation of a determinable fee simple estate

4   with the possibility of reverter in the grantor. <u>King County</u>, 34 Wn.2d at 116. The

5   question here is whether the Deed Restrictions are enforceable restrictive covenants, not

6   whether Plaintiff has a reverter. Restrictive covenants are enforceable promises related to

7   the use of land. <u>Lakewood Racquet Club, Inc. v. Jensen</u>, 156 Wn. App. 215, 222 (2010).

8   "Covenants are useful because they create land use arrangements that remain intact

9   despite changes in ownership of the land." (<u>Id</u>., citations omitted.)

10      A restrictive covenant is unenforceable if it is illegal, unconstitutional, or violates

11  public policy. RESTATEMENT (THIRD) OF REAL PROPERTY: SERVITUDES § 3.1.

12  Defendants do not argue the Deed Restrictions are illegal, unconstitutional or in violation

13  of public policy. Nor do they deny the claim that their actions are in violation of the Deed

14  Restrictions. This Court already held the Deed Restrictions give Plaintiff benefits held in

15  gross, and Plaintiff has "a justiciable interest to enforce the deed restrictions regardless of

16  its ownership of the land." (Dkt. No. 42 at 4.) The Court GRANTS Plaintiff's motion for

17  a declaratory judgment that the Deed Restrictions are valid and enforceable.

18                              <u>**Conclusion**</u>

19      There is no issue of fact with regard to damages and summary judgment for breach of the

20  am/pm agreements and Gasoline Dealer Agreements is GRANTED on Plaintiff's Second Cause

21  of Action for breach of contract. The Guarantees were made for proper consideration, and

22  summary judgment is GRANTED on Plaintiff's Third Cause of Action for breach of the

23

24

1   Guaranties. The Deed Restrictions are enforceable, and summary judgment is GRANTED on

2   Plaintiff's First Cause of Action, Declaratory Judgment on the validity of the Deed Restrictions.

3

4          The clerk is ordered to provide copies of this order to all counsel.

5          Dated this 6th day of August, 2013.

6

7

8                                                    Marsha J. Pechman

9                                                    Chief United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 14